IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
Case Number:

MICHAEL SCOTT EDWARDS, O.D. and )
M. SCOTT EDWARDS, O.D., P.A., )
             )
      Plaintiffs, )
             )
     v. )   **COMPLAINT**:
             )
ALEX AZAR, II, in his capacity as SECRETARY )
OF THE UNITED STATES DEPARTMENT OF )
HEALTH AND HUMAN SERVICES, )
             )
      Defendant. )

  COME NOW, Michael Scott Edwards, O.D., and M. Scott Edwards, O.D., P.A., by and through their attorney, Douglas S. Harris, and present their Appeal and Complaint against the aforementioned Defendant as follows:

**PARTIES**

  1.  Plaintiff Michael Scott Edwards, O.D., is a citizen of Murfreesboro, North Carolina and is a licensed optometrist in the State of North Carolina. Dr. Edwards has been licensed for forty-one years and has never been disciplined in his profession as an optometrist by the State of North Carolina whether for the reasons identified in this complaint or for any other reasons.

  2.  M. Scott Edwards, O.D., P.A., is a North Carolina professional association formed on June 17, 1982, operating in Ahoskie, North Carolina; it, too, has never been sanctioned by the State of North Carolina in connection with the matter set forth in this complaint or for any other reason.

3.      Defendant Alex Azar II, is a defendant in this action in his official capacity as Secretary of the Department of Health and Human Services (HHS,) a cabinet department responsible for a variety of health care programs and services including all the actions taken as described in this Complaint.

## BACKGROUND OF THE CASE

4.      Plaintiff Michael Scott Edwards is a North Carolina optometrist and at all relevant times was a participant in the Medicaid/Medicare Program. Plaintiff M. Scott Edwards, O.D., P.A. is a North Carolina professional association wholly owned by Dr. Edwards and was also a participant in the Medicaid/Medicare Programs at all relevant times. This is an action seeking judicial review of the Final Decision dated October 31, 2019 (filed November 1, 2019) by the Appellant Division of the Departmental Appeals Board (DAB) of the United States Department of Health and Human Services (HHS) by which DAB, acting on behalf of the Defendant Secretary of Health and Human Services (the Secretary) affirmed the revocation of Plaintiffs' Medicare Enrollment billing privileges retroactively back to February 6, 2007.

5.      HHS, the defendant in this action, is an agency in the United States government which has its headquarters in Washington, D.C., and resides for venue purposes in Washington, D.C. It, among other things, enrolls doctors and other medical providers in the Medicare Part B program. The Plaintiffs have been enrolled in the Medicare Part B program at least since 1982. Pursuant to Medicare Part B rules and regulations, the Plaintiffs were required to periodically revalidate their Medicare Enrollment. In the normal course of Medicare Part B requirements, the Plaintiffs

2

revalidated their Medicare enrollment first on January 13, 2008 and again in January 2013.

6. On each of those re-enrollment applications (2008 and 2013) Dr. Edwards fully disclosed that on February 6, 2007, he had entered an Alford Plea in Wake County, North Carolina Superior Court to the felony, Obstruction of Justice. This felony grew out of, in the words of then District Attorney Colon Willoughby in his bill of information submitted to the Court, that Dr. Edwards had committed a crime "by soliciting and collecting campaign contributions in the form of checks that had blank payee lines and causing those checks to be distributed to political candidates without making proper disclosures of those contributions and expenditures to the State Board of Elections." This crime was committed by Dr. Edwards in his capacity as campaign treasurer of the North Carolina State Optometric Society Political Action Committee.

7.. With Dr. Edwards' full disclosure of his conviction (together with accompanying documents of the above) (Exhibit 1), the Defendant in each instance in both 2008 and 2013 revalidated the Plaintiffs' Medicare Supplier billing number. Pursuant to that revalidation, the Plaintiffs continued to provide optometric services to the Defendant's patients and the Defendant continued to pay for the services that Plaintiffs had provided. This norm continued until August 4, 2016.

8. On August 4, 2016, Dr. Edwards' and M. Scott Edwards, O.D. P.A.'s billing privileges were revoked by a letter from Palmetto GBA, a Medicare Administrative Contractor acting on behalf of the Defendant. There was no notice to the Plaintiffs nor was any hearing afforded to the Plaintiffs by Palmetto GBA or the Defendant. Although the revocation letter stated as the reason for the revocation that

3

"The Centers for Medicare and Medicaid Services (CMS) *has been made aware of* Michael Edwards' February 6, 2007 felony conviction for obstruction of justice in Wake County Superior Court" as if that information was a new revelation, it was not. The information of the felony conviction was exactly the same information that Dr. Edwards' disclosed both on his January 13, 2008 CMS re-enrollment from as well as on his January 2013 CMA re-enrollment form. Therefore, the information fully disclosed by Dr. Edwards on the CMS Re-enrollment form was known to Defendant as far back as January 13, 2008. During the course of each re-enrollment consideration by the Defendants in 2008 and 2013, nothing concerning the examination of Dr. Edwards felony conviction prevented the Defendant from re-validating the Plaintiffs' Medicare enrollment either in 2008 or 2013. Although the Palmetto GBA letter characterized the action taken as a "revocation," it was in truth no more than a re-determination of the Defendant's initial determination to revalidate billing privileges which decisions were taken eight years before in 2008 and again three years before in 2013. The 2016 "revocation" acted to supersede and overturn the prior decisions of the Defendant based upon the same underlying facts with no new information or reasons stated to revisit or reconsider the 2008 and 2013 revalidations.

9. The Plaintiffs timely filed for a reconsideration of the revocation on September 2, 2016. On May 3, 2017, the Honorable Hearing Officer Minisha C. Hicks denied the reconsideration request. On June 29, 2017, Plaintiffs appealed that denial to the Administrative Law Judge. On April 19, 2018, the Honorable Administrative Law Judge Leslie Rogall, affirmed the revocation of Petitioners' Medicare Enrollment and Billing Privileges effective February 6, 2007, the date of the conviction. On June 17,

4

2018, the Plaintiffs appealed the Administrative Law Judge's decision to the Department of Health and Human Services Departmental Appeals Board (DAB). On October 31, 2019, (filed November 1, 2019), DAB issued a "Final Decision on Review of Administrative Law Judge Decision" affirming the ALJ decision. From that final decision, the Plaintiffs object, appeal, and file the current action.

10. Therefore, Plaintiffs/Petitioners have fully exhausted all administrative remedies having appealed the initial determination to CMS and then to an Administrative Law Judge. Finally, an appeal was pursued to the Department of Health and Human Services Departmental Appeal Board which rendered its final decision, affirming the Administrative Law Judge and a determination by HHS to revoke the Plaintiffs' billing privileges retroactively to February 6, 2007, by decision rendered October 31, 2019 (and filed November 1, 2019).

## JURISDICTION AND VENUE

11. This is a civil action arising under the Medicare Act 42 U.S.C. § 1395 *et seq.*, The Administrative Procedure Act (APA) and 5 U.S.C. § 551 *et seq.* and the Constitution of the United States. This Court has jurisdiction to review a final decision of the Secretary under 42 U.S.C. § 405(g) and 28 U.C.S. § 1331. *See also* 42 C.F.R. § 405.1006 (Amount in controversy is in excess of $1,630.00). A Department Appeals Board decision is a final decision of the Secretary 42 C.F.R. § 498.90. The final decision of the Secretary was received on November 1, 2019; as a result, this action is timely within the limitation period set forth in 42 C.F.R. § 498.95(a). .

12. Venue is proper in this District under 42 U.S.C. § 405(g) in that Plaintiff Dr. Edwards is an optometrist practicing in this District and Division and Plaintiff

Professional Association was lawfully formed in North Carolina and its business is located in this District and this Division. *See also* 28 U.S.C. § 1391(c).

## DEFEDANTS LACKED SUBJECT MATTER JURISDICTION AND STATUTARY LEGAL AUTHORITY TO TAKE THE UNTIMELY REVOCATION ACTION

13. Numbers 1 – 12 are hereby replead.

14. Defendants in the various stages of appeal have always conceded that Plaintiffs through the person of Dr. Edwards thoroughly disclosed his felony conviction together with details of the conviction on February 6, 2007, such that all aspects of the case were known to the Defendants at least as far back as January 13, 2008. Although as noted, the original Palmetto decision maker, Barry McManus, who wrote the original August 4, 2016 revocation letter causing the revocation of the Plaintiffs' supplier enrollment wrote, "The Centers for Medicare and Medicaid Services (CMS) *has been made aware of* Michael Edwards February 6, 2007 felony conviction for obstruction of justice in Wake County Superior Court" as if this was a new discovery, it was not. CMS was informed of Dr. Edwards' February 6, 2007 felony conviction on CMS's own Re-enrollment form back on January 13, 2008. Based on the knowledge that Dr. Edwards provided on the CMS form and CMS's evaluation of that knowledge, CMS revalidated Dr. Edwards and his corporation's Medicare enrollment and re-activated the Plaintiffs' Medicare Supplier billing number. There was no new information in 2016. There was nothing that could be characterized as "new and material evidence" or "not available nor known at the time of the determination or decision" cited by the Defendants in 2016 in existence as a basis for revocation that was not in existence and disclosed in 2008 (and for that matter disclosed again in 2016.) There were no new complaints nor was

anything disclosed or cited by the Defendants or its contractor as a basis for re-opening or re-visiting the determination that had already been made twice before in 2008 and again in 2013 on these same facts.

15. The 2016 action for all intents and purposes was just a re-opening of the initial determination made in 2008 and again in 2013 to revalidate Dr. Edwards' and his corporation's Medicare Enrollment. Therefore, by its own rules, the 2016 revocation letter which superceded and overturned the previous 2008 and 2016 decisions was illegal. 42 C.F.R. § 405.980(b) provides that:

> A contractor may reopen an initial determination for re-determination on its own Motion – (1) *within one year* from the date of the initial determination or re-determination for any reason; (2) w*ithin fours years* from the date of the initial determination or re-determination *for good cause* as defined in § 405.986, good cause for re-opening under (a) establishing good cause says: "Good cause may be established when (1) there is new and material evidence that (i) was not available or known at the time of the determination or decision; and (ii) may result in a different conclusion or (2) the evidence that was considered in making the determination or decision *clearly showed on its face* that an obvious error was made at the time of the determination or decision. (b) Change in substantive law or interpretive policy.

The Defendant through its contractor did not re-open the initial determination made by CMS to re-validate the Medicare Enrollment for Dr. Edwards' and his corporations' billing privileges within one year of either the 2008 or 2013 revalidations. In fact, the 2016 decision was more than eight years after the 2008 revalidation decision. Neither did the 2016 decision articulate any "*good cause*" at all as defined in 42 C.F.R. § 405.986 that would justify re-opening the 2008 and 2013 decisions.

16. 42 C.F.R. § 405.986 also makes it clear that re-opening a case is not an arbitrary and capricious exercise or meant to be exercised in random fashion. That

7
Case 2:19-cv-00048-D   Document 1   Filed 12/30/19   Page 7 of 15

regulation defines what is <u>not</u> considered to be a basis for re-opening a determination, "A change of legal interpretation or policy by CMS in a regulation, CMS ruling, or CMS general instruction or change in legal interpretation or policy by SSA in a regulation, SSA ruling, or SSA general instruction of entitlement appeals whether made in response to judicial precedent or otherwise *is not a basis for re-opening a determination* or a hearing decision under this section." The Defendant's decisions in 2008 and again in 2013 were "determinations" (notwithstanding that Dr. Edwards' fully disclosed the February 6, 2007 conviction for a felony) concluding that Dr. Edwards and his corporation were still eligible for re-validation of their billing privileges with Defendant and that their billing privileges were in fact revalidated.

17. The Defendant and its contractor, Palmetto GBA, do not contend that they acted within one year "of the initial determination or re-determination" and thereby, the Defendant has forfeited its right to act "for any reason." Further, Palmetto GBA and Defendant have disclosed their reason for acting which was "The Centers for Medicare and Medicaid Services (CMS) *has been made aware of* Michael Edwards February 6, 2007 felony conviction for obstruction of justice in Wake County Superior Court." This is not "new and material evidence" that was not known at the time of the two prior re-evaluations and may result in a different conclusion. There has been no change in substantive law or interpretive policy and there is nothing about the 2008 and 2013 decisions that clearly show on their face that an obvious error was made. Indeed, they tend to show that on two separate occasions two different people looked at the same information and simply did not agree with Barry McManus of Palmetto GBA. Instead the evidence shows that Mr. McManus made a "change in legal interpretation" which

according to 42 C.F.R. § 405.986, "is **not** considered to be a basis for re-opening a determination."

18. The Defendant and its contractor, Palmetto GBA, lacked regulatory or statutory authority to open or re-open a new inquiry into Dr. Edwards and his corporation's billing status eligibility because the Defendant did not re-open or re-determine within one year of the initial determination in 2008 (or for that matter 2013) and did not state or have good cause for re-opening or re-determining the 2008, 2013 decision within four years. By this reason, the Defendant and Palmetto GBA lacked statutory authority and thereby lacked subject matter jurisdiction to re-examine or re-open the issue of Dr. Edward's felony conviction at all. The Defendant can point to no statute which authorizes the Defendant to re-open a decision which has already been made many years before on the same evidence.

### THE 2008 AND 2013 DEFENDANT DECISIONS CONSTITUTED RES JUDICATA AND PRECLUSION ONCE DEENDANT PASSED THE STATUTORY PERIOD TO REOPEN OR RECONSIDER THOSE DECISIONS

19. Numbers 1 – 18 are hereby replead.

20. In all matters before this Court, the 2016, as well as the 2008 and 2013 decisions, the Parties were the same. The issues were also exactly the same. The issues in each instance were always whether Dr. Edwards and his corporation could continue to be eligible to bill Medicare Part B after his February 6, 2007 felony conviction. Anything beyond that subject matter is simply a re-interpretation of the identical evidence.

21. Whether Dr. Edwards and his corporation would have their Medicare enrollment revalidated after full disclosure of Dr. Edwards' felony conviction for

obstruction of justice was an administrative decision of CMS on behalf of the Defendant which Dr. Edwards and his corporation could have appealed, but they did not appeal because it was favorable in 2008 and again in 2013. Although CMS cannot appeal its own decision, it does have special statutory rights to reconsider any prior decision within the confines of 42 C.F.R. § 405.980(b). As noted above, the Defendant could have reconsidered its own decision to revalidate Dr. Edwards' and his corporation's Medicare billing privileges "*for any reason"* within one year of the 2008 decision (or the 2013 decision.) Additionally, by the same statute the Defendant could reopen its determination to revalidate the Medicare enrollment of Dr. Edwards and his corporation "for good cause" within four years of the decision. Such good cause would certainly include Dr. Edwards' omission of his conviction – Dr. Edwards fully disclosed his conviction. CMS could also reopen for any other "new and material evidence . . . not available or known at the time of the determination" – there was none.

22. After the statutory one-year option to reopen for any reason, and after the expiration of the four-year option to reopen for good cause, the Defendant was bound by its prior decisions absent a change in regulation or statutory authority from Congress. The one-year and four-year limits on reopening the case effectively acted as a statute of limitations and barred overturning the 2008 and 2013 decisions.

23. For the foregoing reasons, *res judicata* and preclusion apply to prevent the Defendant from reconsidering the 2008 and 2013 decisions. "In an earlier administrative decision, *at any level,* the adjudicative process may be final and therefore properly treated as preclusive of a subsequent claim either because the decision has been judicially formed *or because of administrative reconsideration*, hearing or review or judicial review

has not been timely sought. Whether it is the same claim must be determined according to general principles of *res judicata. McGowen v. Harris,* 666 F.2d. 60, 65 (Fourth Cir. 1981).

24. The Plaintiff pleads that the Defendant has overturned its own, earlier, Administrative decision with the same Parties and the same Evidence in violation of the principles of *res judicata* and preclusion.

### THE FAILURE OF DEFENDANT TO FOLLOW ITS OWN RULES AND REGULATIONS IS A VIOLATION OF DUE PROCESS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AS APPLIED TO THE GOVERNMENT OF THE UNITED STATES AND TO THIS DEFENDANT

25. Numbers 1 – 24 are hereby replead.

26. The Defendant's 2016 revocation and its retroactive application to February 6, 2007, deprived the Plaintiffs of property interests in that the Defendant seeks to have the Plaintiffs repay approximately $1.4 million which was earned by the Plaintiffs by providing services to the Defendant and its Medicare patients between February 6, 2007, and August 2016. Defendant's action is particularly egregious because it does not allege that any portion of the Plaintiffs' payment were undeserved by reason of over-billing, the failure to perform the services dutifully, or that the Plaintiffs' services were performed in any manner that was not according to professional standards. Rather, the Defendant alleges that they are entitled to reconsider affirmative decisions made respectively made in 2008 and 2016 before which in each instance, Dr. Edwards' properly disclosed his February 6, 2007 conviction for felony obstruction of justice and in each instance the Defendant revalidated his Medicare enrollment and billing privileges

never seeking to reconsider the 2008 and 2013 decisions within any relevant statutory period.

27. The 2016 revocation action by Defendants was a State action which deprived the Plaintiffs of their property interests. The procedures employed were constitutionally inadequate in that they were based upon no statutory or regulatory authority and overrode the regulatory authority set out in 42 C.F.R. §§ 405-980(b) and 405-986. The Plaintiffs have a right to an evidentiary hearing before their property is taken from them and no such evidentiary hearing was ever afforded to the Plaintiffs. The Plaintiffs' property was taken by a letter received from Palmetto GBA on August 4, 2016 (acting for Defendant) and the Plaintiff prior to receiving that letter had no notice that such an action was contemplated and no hearing was afforded to the Plaintiffs.

28. The Defendant has no definable interest in seizing Dr. Edwards' and his corporation's property, $1.4 million, which he earned after full disclosure of his felony conviction and after Defendant revalidated his Medicare Enrollment and billing privileges. Thereafter, Dr. Edwards provided the services to the Defendant and its patients who needed the services of Dr. Edwards. Dr. Edwards provided the services ethically and within the standards of his profession and billed the Defendant ethically and according to the billings standards required by Defendants.

29. The Defendant has offered no explanation as to why its interest would be served by retroactively having Dr. Edwards and his corporation forfeiting $1.4 million back to the date of conviction, February 6, 2007, except to say "CMS has determined that felony obstruction of justice of which Dr. Edwards was convicted poses a risk to the best interest of the Medicare program." In an earlier review, the Honorable Hearing Officer

12
Case 2:19-cv-00048-D   Document 1   Filed 12/30/19   Page 12 of 15

Minisha C. Hicks stated "Trust funds may be at risk if he [Dr. Edwards] continues to participate in the program. It necessarily follows that placing trust funds at risk is a detriment to the beneficiaries." Each of these findings lack rational basis to explain why Dr. Edwards and his corporation should forfeit $1.4 million retroactively because those beneficiaries have already been served and the interest of the Medicare program retroactively are already over. There is no rational interest in looking after the "best interest of the Medicare Program" going backwards.

30. The Defendant's decision lacks rational basis and denies due process as it applies to the Plaintiffs' forfeiting property retroactively with no notice and no hearing.

### JUDICIAL ESTOPPEL WOULD BE PROPERLY EMPLOYED BY THIS COURT TO PREVENT AN INJUSTICE TO THE PLAINTIFFS

31. Numbers 1 – 30 are hereby replead.

32. Both the Departmental Appeals Board which issued the Final Decision and which is appealed to this Court as well as the Honorable Administrative Law Judge Leslie Rogall (whose decision the DAB was reviewing) commented on the injustice visited upon the Plaintiffs by the 2016 Palmetto GBA decision. Footnote 9, on page seven of the DAB decision (Exhibit 2) incorporated Footnote 13 of the ALJ decision which read "Palmetto's inexcusable delay in Petitioner's [Edwards'] understandable detrimental reliance on the 2008 and 2013 approval on the enrollment applications that disclosed Dr. Edwards' felony conviction, resulted in enormous financial liability for a eight and one-half year period." The ALJ stated, however, that she was "not empowered to rectify the situation in Petitioner's favor." DAB then went on to add its own comment to the ALJ footnote – "Neither the ALJ nor the Board is authorized to provide equitable relief by

13
Case 2:19-cv-00048-D    Document 1    Filed 12/30/19    Page 13 of 15

reimbursement or enrolling a supplier who does not meet the statutory or regulatory requirements."

33. DAB admits that there is an injustice, but says that it lacks the lawful ability to give equitable relief. Therefore, the Defendant assumed the legal position in 2008 and 2013 by which they profited by receiving eight and one-half years of valuable benefits from Dr. Edwards' treatment of thousands of patients, but now that Defendant has reversed its decision, nothing can be done about it. "Where a party assumes a certain position in a legal proceeding and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who was acquiesced to the position formerly taken. *New Hampshire v. Maine,* 523 U.S. 742, 749, 121 S.Ct. 1808, 1814, 149 L.Ed.2d 968, 977.

34. Given what the ALJ and DAB describe as "Palmetto's inexcusable delay," the 180-degree change in the Defendants analysis on the same facts and their change of position and the very substantial damage to the Plaintiffs if the Court should conclude that there is no legal or standard equities available to the Plaintiffs, then Plaintiff asks for the appropriate remedy of judicial estoppel. Given what the Defendants described as "Palmetto's inexcusable delay" and the Petitioner's [Plaintiff's] understandable detrimental reliance "on the 2008, 2013 approvals" and the stated inability to do justice here, judicial estoppel is most appropriate.

WHEREFORE, the Plaintiffs pray the Court that:

1. The revocation of the Plaintiff's billing privileges be set aside and reversed;

2. The forfeiture of money paid by Defendant to the Plaintiffs for billing between February 6, 2007 and August 4, 2016, be set aside and reversed;

3. The Defendants be held to be bound by the Defendant's decisions in 2008 and 2013;

4. The Defendants be ordered to revalidate the Plaintiffs' Enrollment and Billing Privileges for Medicare Part B as found in 2008 and 2013.

5. For such other and further relief as the Court deems just and proper.

This the 29th day of December, 2019.

/s/ Douglas S. Harris_____
Douglas S. Harris
Attorney for Plaintiffs
1698 Natchez Trace
Greensboro, North Carolina 27455
Telephone: 336-288-0284
Facsimile: 336-282-9667
Email: dharris12@triad.rr.com
N.C. State Bar No. 9843
Attorney for Plaintiffs